PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------
No. 96-2421
----------------------------------------

D. C. Docket No. 95-387-CIV-ORL-22

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/25/99
THOMAS K. KAHN
CLERK

TYRONE SMITH,

Petitioner-Appellant,

versus

HARRY K. SINGLETARY, JR.,
ROBERT BUTTERWORTH,

Respondents-Appellees.

----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

----------------------------------------------------------------

**(March 25, 1999)**

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI*, Judge.

_____

\* Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

EDMONDSON, Circuit Judge:

Tyrone Smith, a prisoner of the state of Florida, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on grounds of ineffective assistance of counsel.  We affirm the district court's denial of Smith's petition.

## Background

In 1989, defendant Tyrone Smith was charged by information with one count of robbery and one count of obstructing or opposing an officer with violence.  Before his arrest on these charges, Smith had at least one out-of-state felony conviction.[1]

Before trial, the state prosecution offered Smith a plea bargain: "State would offer bottom half of whichever guideline cell that [Smith] falls within and no filing of the notice for

---

[1]Smith was convicted of first-degree robbery in 1979 in New York.

habitual offender." After discussing the state's offer with his counsel, Smith declined the offer and decided to proceed to trial.

A jury later convicted Smith on both counts of the information, and the state filed its notice of intent to seek a habitual-violent-felony-offender enhancement under Florida law, Fla. Stat. § 775.084(1)(b). The Florida court determined that Smith was a habitual violent felony offender (based on his out-of-state conviction) and therefore subjected him to an enhanced sentence. He was sentenced to thirty-years' imprisonment, with a mandatory minimum of ten years, for the robbery count and a consecutive term of five years' supervised probation for the opposing or obstructing count.

After exhausting his state remedies, Smith brought this habeas corpus petition pro se. He contends that he is entitled to relief because he received ineffective assistance of counsel. Smith contends that he rejected the state's plea offer -- which

would have resulted in a sentence between nine and twelve years -- because his trial counsel told him that if he were found guilty at trial he would not be subject to enhanced sentencing. Smith alleges that his counsel assured him that an out-of-state conviction could not serve as a predicate offense under Florida's habitual-offender law and advised Smith that the maximum sentence he faced if convicted at trial was seventeen years.

We accept that, while an out-of-state conviction cannot be used to establish habitual-felony-offender status under Fla. Stat. § 775.084(1)(a) (Supp. 1988),[2] it can be used to enhance a defendant's sentence as a habitual <u>violent</u> felony offender under Fla. Stat. § 775.084(1)(b) (Supp. 1988).[3]  <u>See</u> <u>Canales v.</u>

_____

[2]A habitual felony offender is a defendant who "has previously been convicted of two or more felonies <u>in this state</u>."  Fla. Stat. § 775.08(1)(a) (Supp. 1988) (emphasis added).

[3]A"habitual violent felony offender" is a defendant who "has previously been convicted of a felony or an attempt or

State, 571 So. 2d 87, 88 (Fla. Dist. Ct. App. 1990). Smith contends that he would have accepted the state's plea offer if his counsel had properly advised him that the court could sentence him as a habitual violent felony offender.

The district court granted the state summary judgment. Smith appeals the district court's denial of his ineffective-assistance claim and seeks an evidentiary hearing.[4] No evidentiary hearing on Smith's claim has been held in either federal or state court.

---

conspiracy to commit a felony and one or more of such convictions was for" one (or more) of a list of enumerated violent felonies. Fla. Stat. § 775.08(1)(b) (Supp. 1988).

[4]Smith's petition to the district court also included a claim challenging the state court's use of his out-of-state conviction to enhance his sentence. Smith does not appeal the district court's denial of that claim.

## Discussion

Smith contends that his counsel was ineffective for advising him that his out-of-state conviction could not be used to enhance his sentence. Even though we accept that Smith's counsel gave him incorrect advice about Florida law, his claim still fails.

To prevail on an ineffective-assistance-of-counsel claim, a habeas corpus petitioner must show that: (1) his lawyer's performance was deficient, and (2) "'a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. Strickland v. Washington,

6

466 U.S. 668, 689 (1984); Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988). Because ineffective-assistance claims present mixed questions of law and fact, we exercise plenary review. Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

A habeas corpus petitioner is entitled to an evidentiary hearing on his claim "if he alleges facts which, if proven, would entitle him to relief." Futch v. Dugger, 874 F.2d 1483, 1485 (11th Cir. 1989). A district court, however, need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel. See Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982).

A lawyer's affirmative misrepresentation about the consequences of a guilty plea may, in some cases, fall below the wide range of professional competence. But ultimately, "[i]n any case presenting an ineffectiveness claim, the performance

inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.

The clarity or lack of clarity of Florida law about the use of an out-of-state conviction to enhance a defendant's sentence under the habitual-violent-felony-offender provision, Fla. Stat. § 775.084(1)(b), is important in determining whether the advice given by Smith's counsel was reasonable when it was given. Ignorance of well-defined legal principles is nearly inexcusable. See Cooks v. United States, 461 F.2d 530, 532 (5th Cir. 1972) (holding counsel ineffective where controlling Supreme Court precedents, decided more than a decade before counsel rendered his advice, demonstrated unequivocally that counsel's advice was erroneous); 2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 17.4, at 502 (4th ed. 1996).[5] But, as an

---

[5]Because a lawyer's performance must be evaluated under prevailing professional norms, see Strickland, 466 U.S. at 688, cases involving allegations of attorney negligence -- also evaluated based on an objective standard of reasonableness -

acknowledgment that law is no exact science, "the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized . . . ." Id., § 17.1, at 497 (citing cases); Pitts v. Cook, 923 F.2d 1568, 1573-74 (11th Cir. 1991) (concluding that counsel's failure to raise Batson-type claim before Batson had been decided was not constitutionally ineffective assistance of counsel).

The giving of legal advice that later is proven to be incorrect, therefore, does not necessarily fall below the objective standard of reasonableness. See generally Cooks, 461 F.2d at 532 ("[C]ounsel's inability to foresee future

---

- can be useful to our analysis. We do not even hint, however, that every act of legal malpractice amounts to ineffective assistance of counsel under the Constitution. We are certain that the civil liability standard and the constitutional standard do not exactly coincide. When we cite to malpractice treatises or precedents, this is our reasoning: ordinarily, at least, lawyers' acts or omissions that do not rise to the level of professional malpractice, a fortiori, cannot amount to a constitutional violation.

pronouncements [by the courts] . . . does not render counsel's representation ineffective . . . . Clairvoyance is not a required attribute of effective representation.") (citations omitted); see also Cianbro Corp. v. Jeffcoat & Martin, 804 F. Supp. 784, 790 (D.S.C. 1992) ("[A]n attorney cannot be held liable for following the plain terms of a statute when there are not compelling circumstances to suggest [otherwise,]" even when a court later decides that interpretation is erroneous.).

In the instant case, Smith was sentenced under section 775.084(1)(b), Fla. Stat. (Supp. 1988), which was effective 1 October 1988. Section 775.084(1)(b) does not specifically say whether out-of-state convictions may serve as predicate offenses for an enhanced sentence.

The state made its plea offer in January 1990, and Smith rejected it the same day it was made. The earliest appellate decision to hold that the habitual-violent-felony-offender provision authorizes an enhanced sentence on the basis of an

out-of-state conviction, <u>Canales v. Florida</u>, 571 So. 2d 87 (Fla. Dist. Ct. App. 1990), was not decided until 13 December 1990.

The defendant in <u>Canales</u> argued that, because the habitual-violent-felony-offender provision does not specifically permit the enumerated offenses to have been committed outside Florida, the court should apply a rule of lenity and construe the provision in his favor, to exclude his out-of-state conviction. <u>Id.</u> at 88. The <u>Canales</u> court rejected that argument after determining that it was contrary to the intent of the Florida legislature, writing, "a careful reading of the entire statute shows that the legislature intended to treat habitual felons and habitual violent felons differently and elected not to require both felonies to be committed in Florida when dealing with violent felons." <u>Id.</u> at 88-89.

The reasonableness of Smith's lawyer's advice must be assessed in the light of the uncertainty in Florida law at the time the advice was given, that is, pre-<u>Canales</u>. Under the

11

circumstances presented in this case, the alleged advice of Smith's counsel was not unreasonable. The version of the habitual-violent-felony-offender provision under which Smith was sentenced became effective less than a year and a half before Smith's counsel had to evaluate the state's plea offer. When the advice was given, there were no appellate decisions providing guidance to Smith's counsel. The later <u>Canales</u> decision evidences, that at the time pertinent to this case, the applicable law was not settled against Smith: it was a live issue in Florida law. <u>See</u> Mallen & Smith, <u>supra</u>, § 17.7, at 511-12 ("A commonly quoted view is that there is no [malpractice] liability for a judgmental error regarding a proposition of law 'which has not been settled by the court of last resort in the State and on which reasonable doubt may be entertained by well-informed lawyers.'" (quoting <u>Hodges v. Carter</u>, 80 S.E.2d 144, 146 (N.C. 1954)). Smith has not pointed to case law that existed when his

counsel rendered his advice that was contrary to his counsel's conclusion.

Smith instead argues that the habitual-offender provisions are inherently clear. He says that a comparison of sections 775.084(1)(a) and 775.084(1)(b) shows the obvious error in his counsel's advice: the phrase "in this state" modifying the qualifying convictions is conspicuously absent from the habitual- violent-felony-offender provision, though it appears in the habitual-felony-offender provision. This comparison can give rise to an inference, one which Canales seems to accept. But, even if many reasonable lawyers, at the pertinent time, would not have interpreted the habitual-violent-felony-offender provision as Smith's counsel did, no relief can be granted unless it is shown that no reasonable lawyer, in the same circumstances, would have interpreted it as Smith's counsel did. See Rogers, 13 F.3d at 386; see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("'The

13

[ineffective-assistance] test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . .'") (quoting <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11th Cir. 1992)).

The statute is not so unmistakably plain that no reasonable lawyer could have misconstrued it.  <u>See</u> <u>Kimel v. State of Florida Bd. of Regents</u>, 139 F.3d 1426, 1431 (11th Cir. 1998) ("Although we make no definite rule about it, the need to construe one section [of a statute] with another, by its very nature, hints that no <u>unmistakable</u> or <u>unequivocal</u> declaration is present."), <u>cert. granted</u>, 119 S. Ct. 901 (1999).  The defendant in <u>Canales</u> asserted the same view that Smith's counsel allegedly held: that out-of-state convictions could not be used to enhance a defendant's sentence under section 775.084(1)(b).  The <u>Canales</u> court never indicated that the defendant's

14

contentions were frivolous or otherwise unreasonable, though it ultimately discounted them. And the <u>Canales</u> court does not use words like "plain meaning" or "unambiguous" in its opinion construing the pivotal statute.

Also, section 775.084(1)(b) designates specific offenses that will trigger an enhancement. Each of these offenses is defined by Florida law. <u>See, e.g.</u>, Fla. Stat. § 806.01 (defining arson); Fla. Stat. § 794.011 (defining sexual battery); Fla. Stat. § 812.13 (defining robbery). It was not unreasonable for Smith's counsel to think, in the context of Florida's criminal law, that section 775.084(1)(b) referred to those offenses as they are designated by Florida law, in other words, that the Florida statute contemplated convictions under Florida law for the listed offenses. At the pertinent time, Smith's counsel (or more accurately, every reasonable lawyer) did not have to conclude that Florida intended to give some kind of extraterritorial effect to the criminal law of other jurisdictions.

15

Under the conditions existing in this case, Smith cannot show that the advice his counsel gave could not result from the proper exercise of skill and professional judgment.  Because the record conclusively establishes that his counsel's performance was not deficient, we AFFIRM the district court's decision on that ground.

The district court's denial of Smith's petition is AFFIRMED.